IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA    :

          :

vs.         :   CRIMINAL ACTION 07-00158-CG-N
             CIVIL ACTION 10:00057-CG-N

          :

LAPHONSE TREMANE AKILIO YOUNG,

          :

## REPORT AND RECOMMENDATION

Pending before the Court is Petitioner LaPhonse Tremane Akilio Young's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 163), the United States' Response in Opposition (Doc. 174), petitioner's Reply (Doc. 181)[1], and several additional motions filed by Petitioner.[2] This action was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 8(b) of the Rules

---

[1] Although this document is entitled an "Objection and Motion to Reconsider Denial of Motion to File Affidavit Ex Parte Under seal Material Witness Use Immunity and Motion for Discovery," petitioner therein addresses, *inter alia*, the United States' arguments in its Response (Doc. 174) in opposition to petitioner's § 2255 motion. Consequently, petitioners arguments in this document have been carefully considered to the extent they indeed Reply to the United States' Response in opposition (Doc. 174).

[2] On April 19, 2010, Petitioner filed a Motion for Leave to File a Supporting Affidavit under Seal (doc. 168), additionally requesting the Court appoint an attorney and grant immunity or a mystery witness whom Petitioner contends could testify as to Petitioner's "actual innocence" in this case. This motion was denied by the Court on May 10, 2010. (Doc. 177). Subsequently, Petitioner filed an Objection and Motion to Reconsider this Court's Denial of Petitioner's Motion for Leave to File an Affidavit Under Seal, (doc. 181) which contains, in part, a reply to the government's opposition brief. Also pending before the court are Petitioner's Motion for Leave to file Motion to Amend and Motion for Production of Documents and Issuance of Subpoena Duces Tecum Out of Time (doc. 182), Motion to Amend Motion to Vacate under § 2255 (doc. 183), and Ex Parte Motion for Production of Documents and Issuance of Subpoena Duces Tecum Under Seal (doc. 184). All four of these pending motions (docs. 181, 182, 183, and 184) are hereby due to be denied.

Governing Section 2255 Cases.[3]  It is now ripe for the court's consideration.  Having carefully considered Petitioner's motions, the memorandums in support thereof, the memorandum in opposition, and the record, the undersigned finds that no evidentiary hearing is required, recommends that Petitioner's motions be denied, that this action be dismissed, and that judgment be entered in favor of the United States of America, and against Petitioner LaPhonse Tremane Akilio Young.

<u>Procedural Background</u>

On May 24, 2007, Petitioner Young was indicted for violating 18 U.S.C. § 922(g)(1), being a convicted felon in possession of a firearm, as well as being a convicted felon in possession of ammunition.  (Doc. 1).  On July 18, 2007, this Court appointed attorney Lila Virginia Cleveland to represent Young regarding these charges.  (Doc. 7).  This Court also accepted Petitioner's plea of "not guilty" on that date.  (Doc. 9).  A few months later, Young was found guilty following a jury trial on October 24, 2007, (doc. 91), and was sentenced by District Judge Granade to 120 months on February 14, 2008.  (Doc. 134 at 76).  Judgment was entered by this Court on February 20, 2008, and Petitioner appealed.  (Docs. 114, 116).  On July 11, 2008, Petitioner was allowed to terminate his appellate counsel, and, at his request, was allowed to proceed *pro se* in the appeal of his case.  (Docs. 117, 140).  However, on November 21, 2008, the United States Court of Appeals dismissed Young's appeal for failure to prosecute, noting

---

[3]  The Honorable United States District Judge Callie V. S. Granade presided over the trial proceedings in this action and imposed the challenged sentence.  On February 1, 2010, Judge Granade referred the matter to the undersigned Magistrate Judge for entry of a Report and Recommendation.  The undersigned has reviewed the Petitioner's motions and related documents, the transcripts of the trial and sentencing hearing, and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings before Judge Granade.  Based upon that review, the undersigned makes the following report and recommendation.

specifically Petitioner's failure to file an appellant's brief within the time allowed by the rules. (Doc. 159).

There is nothing in the record to suggest that Young pursued a petition for writ of certiorari with the United States Supreme Court. Allowing 90 days for the filing of such a petition under Supreme Court Rule 13, Petitioner's convictions became final on February 21, 2009 - - 90 days following November 21, 2008. Petitioner's motion to vacate was timely filed in this Court on February 1, 2010. (Doc. 163).

<u>Factual Background</u>

As noted above, this Court appointed attorney Lila Cleveland to represent Petitioner in his defense regarding the charges against him related to his illegal possession of a firearm and ammunition. (Doc. 7). However, on July 25, 2007, a mere week after her appointment, Petitioner filed a motion with this Court seeking to terminate Ms. Cleveland's services, and instead to represent himself *pro se* in this matter. (Doc. 10). Judge Cassady initially ruled that Young's motion seeking to terminate Ms. Cleveland's services was moot following a pretrial conference on August 7, 2007, when Young stated in the courtroom that he did, in fact, wish to proceed with Ms. Cleveland as counsel. (Doc. 36). However, Young then filed a motion for clarification arguing that he believed that he had been promised during the pretrial hearing that he could proceed *pro se* with assistance from attorney Cleveland, a sort of "hybrid" representation. (Docs. 40, 42). Subsequently, Judge Cassady convened a special hearing to address the issue of Young's self-representation on September 28, 2007, the Friday before jury selection. (Doc. 46). Petitioner Young was granted the right to proceed *pro se* in his trial, as he requested, but he was specifically denied any request for hybrid representation. (Doc. 54).

On Monday, October 1, 2007, prior to jury selection, Young requested an *ex parte* conference with District Judge Callie V.S. Granade. The following was stated:

> THE COURT: All right. Mr. Young, you requested this conference. First, you need to know that an *ex parte* conference is highly unusual.
>
> THE DEFENDANT: Yes, sir [sic].
>
> THE COURT: If I determine this is something the other side needs to be in on, I'm going to invite them in.
>
> THE DEFENDANT: Okay. No problem.
>
> THE COURT: Go ahead.
>
> THE DEFENDANT: This morning I wanted to speak with the Court concerning Judge Cassady's ruling on late Friday afternoon concerning my proceeding *pro se* with standby counsel, Ms. Cleveland.
>
> THE COURT: Okay. Well, let me stop you. First of all, why does this need to be without the other side here?
>
> THE DEFENDANT: Well, Judge, you can invite them in. It doesn't matter.
>
> THE COURT: All right. Would you ask the other side to come in? And we'll just wait.
>
> THE DEFENDANT: Okay.
>
> THE COURT: Because – I understand.
>
> THE DEFENDANT: All right.
>
> (The clerk left and returned with Mr. Sigler and Mr. Butler.)
>
> THE COURT: Good morning.
>
> MR. SIGLER: Good morning.
>
> MR. BUTLER: Good morning, Judge.
>
> THE COURT: Have a seat. Mr. Young stated that he wanted to talk about Judge Cassady's ruling on Friday. So go ahead, Mr. Young.

4

THE DEFENDANT: Yes, Judge. In an attempt, Your Honor, to perfect this record, Judge Cassady ruled on late Friday afternoon – I had brought up the issue to proceed *pro se* under Faretta and it was granted. I also moved to proceed *pro se* with the assistance of standby counsel in a hybrid situation and he granted that, too.

THE COURT: Well, I have talked to Judge Cassady, and he indicated to me that he did not grant it. He granted you to have not a hybrid, but standby counsel, and that's not the same as hybrid representation.

THE DEFENDANT: Okay. All right. So standby counsel – would the Court define for me what is standby counsel?

THE COURT: Standby counsel means that Ms. Cleveland will be in the courtroom, she will not be sitting at counsel table with you, you will be able to confer with her at the breaks and during lunch but she is not going to direct how you do any of the questioning, any of your objections, or anything else. If you're going to represent yourself, you are going to be your own counsel. You can have her advice, as I said, during the breaks. But that's about it.

THE DEFENDANT: Okay. So, well, it was not my understanding that she doesn't sit at counsel table.

THE COURT: Well, she's not your counsel. You are your own counsel.

THE DEFENDANT: Right.

THE COURT: If you want to represent yourself. So I'm not going to allow her to sit at counsel table. She will be in the courtroom in case you decide that you don't want to represent yourself anymore and that you want the assistance of counsel, so that she would be able to know what has gone on and could take over the defense. But I'm not going to allow her to direct you in any way. If you're going to represent yourself, you're going to represent yourself.

THE DEFENDANT: Okay, Your Honor. I understand that. I just have a – a problem with that. And here's the problem that I have with that: If Ms. Cleveland is appointed to assist me but she can't sit at counsel's table, she can't interject herself, she can't be proactive in the case, then you all are really not giving me any assistance of counsel.

THE COURT: Well, the only reason for standby counsel is to take over if you decide that you don't want to or don't have the ability

to represent yourself. If you are going to be your own lawyer, you've got to do it on your own.

THE DEFENDANT: Okay. So this is – okay. Well, what about the hybrid?

THE COURT: There is no hybrid representation. You either represent yourself or you have a lawyer. There's nothing in between.

THE DEFENDANT: Okay. So the United States versus LaChance is not on point? You have discretion in that.

THE COURT: I don't know what United States versus LaChance says. If you would like me to take a look at it, do you have a copy?

THE DEFENDANT: Yes, ma'am, I would. (Indicating.)

THE COURT: (Reading.) I don't think that my ruling is in any way controverted by the decision you've just given me. So that's going to be my ruling. If you decide during the middle of the trial or at any point during the proceedings that you want representation, I will allow Ms. Cleveland to take over. But we're not going to have Ms. Cleveland doing some of the trial and you doing some of the trial. You're either going to represent yourself with the ability to consult with Ms. Cleveland during breaks or you're going to have her represent you. But there's not going to be a situation where it's a little bit this and a little of that. Okay?

THE DEFENDANT: Okay. Well, at this time, Judge, I move to withdraw and I'll let Ms. Cleveland represent me.

THE COURT: All right. I frankly think that's a wise decision. So I will allow you to proceed with Ms. Cleveland as your counsel. Okay?

MR. SIGLER: Your Honor, Mr. Young - - if I can interject?

THE COURT: Yes.

MR. SIGLER: Mr. Young's own precedent on a previous appeal, the United States Supreme Court ruled in LaPhonse Young that any request after the jury is impaneled is untimely. So I would just like to emphasize for the record that if he is withdrawing his request to represent himself, this is the last chance he will have to raise that opportunity to proceed *pro se*. In the future, once the jury is impaneled today, the request will be an untimely request.

THE COURT: I'm assuming that Mr. Young has made this decision and is going to stick with it.

THE DEFENDANT: Yes.

THE COURT: But if he hasn't, I'll address that at the time.

THE DEFENDANT: I have, Judge, and I'm familiar with United States versus Young. It's my case.

THE COURT: I guess you would be familiar with it. Okay. We'll proceed with Ms. Cleveland as counsel, then.

THE DEFENDANT: Thank you, Judge.

(Doc. 127 at 7-12).

Subsequently, the trial proceeded with Ms. Cleveland as counsel for Petitioner, with testimony from numerous postal inspectors reflecting that during the course of investigating a mail theft case involving Young, while searching the apartment where Petitioner Young was living, they found a nylon pistol holster containing a magazine loaded with 9-millimeter ammunition. (Doc. 148 at 18-19, 32, 37-38). The gun holster and ammunition were not seized by the inspectors, as those items were not within the scope of the search warrant at the time. (Id. at 40-41). Documents seized from Petitioner's residence during the search included a receipt for the purchase of a 9-millimeter handgun, and this receipt was introduced into evidence at the trial. (Id. at 42-43). Also seized in the search was a backpack with ten bullets found loose in a side pocket, as well as checks in Petitioner Young's name and another address in Mobile, Alabama. (Id. at 88-89). Numerous other documents were found during the search reflecting both Petitioner's name, as well as that of his girlfriend, Shacovia Howell, even including Young's

birth certificate and passport.  (Id. at 90, 103, 106).  Following the search, an arrest warrant was issued for Petitioner Young.[4]  (Id. at 196).

Deputy United States Marshal Andy Sellars testified at trial that he first attempted to arrest Young on the morning of November 28, 2006, but that Young spotted him and sped away along Airport Boulevard, which, for Deputy Sellars to have chased him, would have caused a dangerous situation for many people in the early morning rush hour traffic.  (Doc. 132 at 52-57).  Subsequently, however, on December 4, 2006, Young was successfully arrested inside of a Wal Mart store on Schillinger Road in Semmes, Alabama.  (Id. at 57, 61).  Deputy Sellars stated the arrest required a number of officers and marshals, with Petitioner Young resisting the arrest, being belligerent and profane during the incident.  (Id. at 58-62).  Deputy Sellars testified that they patted Young down as best as they could under the circumstances, and that he noted that Young was wearing thick, multiple layers of clothing, with sweatpants that gathered at the bottom.  (Id. at 63-66).

Testimony reflected that Young was in the backseat of the automobile alone for a short period of time after his arrest while the officers attempted to locate Young's automobile in the parking lot.  (Id. at 67).  During his transport to Metro Jail, Petitioner Young used much profanity toward Deputy Sellars, and made a lot of foot and hand movement.  Postal Inspector David Dirmeyer testified that, during the transport, Young was kicking his legs, squirming, and raising his knees toward his chest, which Dirmeyer found unusual.  (Id. at 91).

Subsequently, on February 15, 2007, while in the process of cleaning out his vehicle, the same vehicle used to transport Petitioner to Metro Jail just weeks earlier, Inspector Dirmeyer

---

[4] During the trial, a written stipulation was entered that Petitioner Young was a previously convicted felon.  (Doc. 132 at 30).

found a loaded nine millimeter pistol under the back seat where Petitioner had been seated on December 4, 2006, the night of his arrest. (Id. at 93-98). The serial number on the gun was TEY4286, identically matching that on the receipt found previously by the postal inspectors in Petitioner Young's residence. (Id. at 98; Doc. 148 at 79).

As the trial was nearing the end, defense counsel Lila Cleveland, without Petitioner Young, met with Judge Granade, as well as Judge Granade's deputy clerk and law clerk. The following was stated:

> MS. CLEVELAND:  Good afternoon.  How are you?
>
> THE COURT:          Good.
>
> MS. CLEVELAND:  Judge, I asked to talk to you a minute.  My client has just told me that he intends to take the stand.  And in doing so I asked him specifically what things he planned on testifying about.  And at this time I need to make a motion to withdraw, because there are some ethical issues that have arisen, if I continue to represent him when he takes the stand.  To get into what they were specifically would violate attorney-client privilege. But have you ever heard the term of a "noisy withdrawal?"
>
> THE COURT:          No, I can't say that I have.  Well, is what he wants to testify about, would it be admissible?  In terms of relevant to this lawsuit?
>
> MS. CLEVELAND:  Some, some, some of it would.  But again Judge, it puts me in an ethical quandary of that.  Again, I can't specify what exactly it would be.  But, again, Judge I don't make this motion lightly.
>
> THE COURT:          Well, at this point, I think we are going to proceed if he decides to take the stand.
>
> MS. CLEVELAND:  Oh, he's going to.  But, Judge, well, I guess I can say this, without getting into any specifics but I would be suborning perjury if I continued representing him, based upon what he told me his testimony would be to certain aspects of this case. I'm already extremely uncomfortable representing him.  In fact, you know, he's run this case.  Even after he told me he wanted me to be his lawyer at jury selection, he's directed this case.  And every time I try to do anything independent of him, he screams

about wanting to go to the judge and wanting to fire me. So there is really no real attorney-client relationship. So I guess that's why I decided to tell you what I did. There is no attorney-client relationship in the true sense of the word here at all. He still sees me as his gopher or his standby – not even standby counsel, because he doesn't listen to anything I say.

THE COURT: Well, we're going to wait until the government's case is over and I will address these issues at that time.

MS. CLEVELAND: Yes, ma'am. Okay.

THE COURT: So –

MS. CLEVELAND: Thank you.

THE COURT: Okay.

(Doc. 132 at 122-124).

Following the conclusion of the prosecution's case, counsel for Petitioner Young presented three witnesses. (Id. at 137-160). After the testimony of the witnesses, the following hearing was held outside of the presence of the jury:

THE COURT: All right. Y'all have a seat.

Mr. Young, your lawyer informs me that you want to take the stand; is that correct?

THE DEFENDANT: That's correct.

THE COURT: All right. And she also informs me that it puts her in somewhat of an ethical dilemma. And so, accordingly, I'm going to allow you to take the stand and testify to whatever you want to testify to without her asking you any questions. I will allow the government to object. It puts them in a hard position, because they can't anticipate what you're going to say in general without a question in front of them. But I'm going to allow you to testify to whatever it is you want to testify to in this case.

I will allow the government to object and will ask you to stop your testimony while the government is objecting, and I will rule on that objection at the time. But your lawyer's not going to have any input by asking you questions during your testimony. Is that – do you understand that?

> THE DEFENDANT: I do, Judge. And what's my lawyer's ethical conflict?
>
> THE COURT: Well, you will have to discuss that with her. That's something between you and her. All right?
>
> THE DEFENDANT: Well, I've had issues between me and her that you won't let me discuss with you. So –
>
> THE COURT: Well, I understand that. But you need to talk to her about what she perceives her ethical conflicts to be. And I'm going to allow you to testify under the conditions that I've just described. All right. Does the government have any objection to that?
>
> MR. BUTLER: We don't. We'll – as Your Honor pointed out, it's going to be difficult during a narrative response, but we'll do the best we can with that and try to make our objections concise.
>
> THE COURT: All right.

(Id. at 161-162). Subsequently, Petitioner Young took the stand testifying in a long, narrative form to the jury, denying that he had ever "handled a firearm," also stating that he is "a convicted felon" and that he "knew better than to handle the firearm." (Doc. 132 at 171). During cross-examination, Young admitted to five prior felony convictions, with four of the five directly relating to fraud and deceit. (Id. at 189).

Following Petitioner Young's testimony in which he denied all allegations of possessing the firearm, and denied living in the residence where the receipt to the firearm, among many other incriminating documents were seized on the day of the search, the government called Young's former girlfriend, Shacovia Howell, as a rebuttal witness. (Id. at 213). Ms. Howell testified that she had seen Petitioner with a gun – the particular gun found in the inspector's vehicle – many times while they dated. (Id. at 215, 224). On Wednesday, October 24, 2007, after 45 minutes of deliberating, the jury returned with a unanimous guilty verdict. (Doc. 133 at 58-59).

As noted previously, Petitioner was sentenced to 120 months and then failed to properly appeal his conviction. (Docs. 134, 159). On February 1, 2010, Petitioner filed his motion to vacate under 28 U.S.C. 2255, raising the following claims:

> (1) The indictment should be dismissed on the basis of prosecutorial misconduct in the grand jury.

> (2) Ineffective assistance of counsel – the cumulative effect of prosecutorial misconduct prejudiced the defendant's substantive rights warranting dismissal.

> (3) Ineffective assistance of counsel – the district court erred when it forced defendant to choose between two constitutional rights, the right to testify and the right to counsel, warranting dismissal.

> (4) Ineffective assistance of counsel – it was an error for the court to refuse a self-representing defendant the right to possess copies of the juror questionnaires to prepare for trial

> (5) Ineffective assistance of counsel – it was an error for the district court to restrict stand-by-counsel's assistance forcing *pro se* defendant to withdraw his right to self-representation.

> (6) Trial counsel rendered egregious ineffective assistance of counsel.

> (7) The United States District Court violated movant's constitutional rights and denied him due process of law.

> (8) Defendant is actually innocent.

(Doc. 163 at 4-13).

The government responded to Petitioner's motion to vacate, arguing that habeas issues one through five, seven and eight, are procedurally defaulted, and that habeas issue six is due to be denied. (Doc. 174). The Court now considers each of Young's claims in turn.

Standard of Review

"Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004). Because collateral review is not a substitute for direct appeal, the grounds for

collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; Thomas v. Crosby, 371 F.3d 782, 811 (11th Cir. 2004); Hill v. United States, 368 U.S. 424, 426-27, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962)). The Eleventh Circuit has held that "a defendant must assert all available claims on direct appeal" and "[r]elief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The court noted that "a non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice." Id. at 1232-33 (citations omitted).

Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a § 2255 motion unless defendant establishes cause and actual prejudice from the alleged error, or that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Id. at 1234. To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Id. at 1235. A meritorious claim of ineffective assistance of counsel may constitute cause. United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000). In order to establish prejudice, a defendant must show that "errors at trial worked to his *actual* and

substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Dipietro v. United States, 251 Fed. Appx. 606, 608 (11th Cir. 2007) (citing Cross v. United States, 893 F.2d 1287, 1292 (11th Cir. 1990).

In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show two things:  "(1)  'counsel's performance was deficient,' meaning it 'fell below an objective standard of reasonableness;' and (2) 'the deficient performance prejudiced the defendant.'"  Gordon v. United States, 518 F.3d 1291, 1297 (11th Cir. 2008) (quoting Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984)). Deficient performance requires a showing that counsel's performance was "objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases." Cross, 893 F.2d at 1290; see also Gallo-Chamorro v. United States, 233 F.3d 1298, 1303 (11th Cir. 2000) (petitioner "must prove deficient performance by a preponderance of competent evidence, and the standard is reasonableness under prevailing professional norms").

"There is a strong presumption that counsel's performance was reasonable and adequate," which can be overcome only if the petitioner demonstrates that "no competent counsel would have taken the action that his counsel did take."  Gordon, 518 F.3d at 1301 (citations omitted); see also Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) (petitioner satisfies deficient performance only by proving that counsel "made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment.")  The test for reasonableness of performance "is not whether counsel could have done something more or different; instead, we must consider whether the performance fell within the broad range of reasonable assistance at trial."  Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1209 (11th Cir. 2007).

As for the prejudice prong, "[a] petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high." Stewart, 476 F.3d at 1209 (citation omitted). Indeed, prejudice requires a showing of a "reasonable probability that the result of the proceedings would have been different had counsel not performed deficiently." Cross, 893 F.2d at 1290. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." Gallo-Chamorro, 233 F.3d at 1303-04. A petitioner must show that the errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Cross, 893 F.2d at 1292 (citation omitted) (emphasis in original). Thus, the prejudice requirement obliges a petitioner to prove "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Davis v. Terry, 465 F.3d 1249, 1255 (11th Cir. 2006) (citation omitted).

In order to succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy both prongs of the Strickland test. Butcher v. U.S., 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been."). Consequently, the court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one." Strickland, 466 U.S. at 697; Oats v. Singletary, 141 F.3d 1018, 1023 (11th Cir. 1998) (courts "are free to dispose of ineffectiveness claims on either of its two grounds"); Duren v. Hopper, 161 F.3d 655, 660 (11th Cir. 1998) ("[I]f a defendant cannot satisfy the prejudice prong, the court need not address the performance prong"). Furthermore, "[c]onclusory allegations of ineffective assistance are insufficient." Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992) (internal quotations omitted). In addition, the "failure to raise nonmeritorious issues does not constitute ineffective assistance" of counsel. Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994).

Given this exacting burden, "the cases in which habeas petitioners can properly prevail … are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc).

<u>Analysis</u>

I.      Habeas Claims One through Five, Claim Seven

Petitioner's issues raised in Claims One, Two, Three, Four, Five, and Seven are each raised for the first time in this § 2255 collateral attack.  As noted above, it has long been held that a collateral attack is not a substitute for a direct appeal.  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004).  Petitioner's Claims One through Five, and Claim Seven each concern prosecutorial misconduct, or alleged error on the part of the district court, despite being phrased by Petitioner as "ineffective assistance of counsel."  (Doc. 163 at 4-14).

In Petitioner's Claim One, he contends that prosecutors committed prosecutorial misconduct by presenting details of Petitioner's criminal background to the Grand Jury.  (Doc. 163 at 4-5).  In Claim Two, Petitioner claims that the prosecutor knowingly withheld Brady materials regarding its key witness Shacovia Howell, and other key material.  (Id. at 5).  In Claim Three, Petitioner claims that the district court erred when it forced Petitioner to choose between his right to testify at trial and his right to counsel.  (Id. at 6).  Petitioner's Claim Four consists of his allegation that the district court erred in refusing to allow him to possess copies of the juror questionnaires in preparing for trial.  (Id. at 7).  Claim Five of his motion concerns Petitioner's assertion that the district court erred in its restrictions on Petitioner's standby counsel which "forced" Petitioner to withdraw his right to self-representation.  (Id. at 8).  In Claim Seven, Petitioner asserts that the district court violated his due process rights.  (Id. at 10).

As each of these claims could have been raised in Petitioner's direct appeal, he can only now raise them if he has shown cause for not raising the claim of error on direct appeal and

actual prejudice from the alleged error.[5]  <u>Lynn v. United States</u>, 365 F.3d 1225, 1234 (11th Cir.

2004).  Further, Petitioner could be allowed to proceed with his § 2255 motion if "'a

constitutional violation has probably resulted in the conviction of one who is actually innocent.'"

<u>Id.</u> (internal quotation marks omitted).

To show cause in this action, Petitioner must show that "some objective factor external to

the defense impeded counsel's efforts" to raise these claims in Petitioner's direct appeal.  <u>Murray</u>

<u>v. Carrier</u>, 477 U.S. at 488.  Initially, in his § 2255 motion, Petitioner made no attempt to allege

a reason for failing to properly and fully assert these claims on direct appeal.  (Doc. 163).

Subsequently, when Petitioner attempted to amend his § 2255 motion, he admitted that his

claims were procedurally barred, but also made a conclusory statement that he was actually

innocent of his crime.  (Doc. 183 at 6).

In addition to Young's own admission to the procedural default of his claims, the Court

notes that Claims One through Five, and Claim Seven, were available to be asserted on direct

appeal, and Young has failed to show that any "factor external to the defense impeded counsel's

efforts" to raise these claims on direct appeal.   <u>Murray v. Carrier</u>, 477 U.S. at 488.  It is not

disputed that Young fought for, and was granted, the right to serve as his own appellate counsel;

therefore, he cannot now, and in fact does not, assert any ineffective assistance of appellate

counsel claim which might serve as "cause" for excusing this procedural default.  Young filed an

appeal on his own behalf, but because of his own failure to follow the rules of the Court of

Appeals, his appeal was dismissed in a summary order issued by the Circuit Court Clerk.  (Doc.

---

[5] On August 2, 2010, Petitioner filed an "Amended Section 2255 Motion and Memorandum of
Law in Support" in an apparent attempt to amend his § 2255 motion.  (Doc. 183).  In this document,
Petitioner states that he "concedes this claim is procedurally defaulted."

159).  In addition, Young has failed to "actual prejudice from the alleged error."  Lynn v. United

States, 365 F.3d at 1232-33.

Since the Court has determined that Petitioner's Claims One through Five and Claim

Seven are procedurally defaulted, the only exception which would allow the Court to consider

these claims would be the actual innocence of Young.  "'[A]ctual innocence' means factual

innocence, not mere legal innocence."  Lynn, 365 F.3d at 1235, n. 18 (quoting Bousley v. United

States, 523 U.S. 614, 623 (1998)).  Following a complete review of the record and transcripts in

this matter, the Court is satisfied that there is no evidence establishing that Petitioner Young is

actually innocent.[6]  Therefore, the Court has no basis to reach the merits of Petitioner's Claims

---

[6] The jury's verdict in the case is supported by more than sufficient evidence, which included: the testimony of Postal Inspector Charles Thompson that, upon executing a search warrant for 3700 Carlyle Close, Unit 809, on September 29, 2006, agents found several documents in a shoebox bearing Young's name, including a receipt for the purchase of a 9-millimeter handgun which was introduced into evidence (doc. 113 at 42); ten bullets found loose in a seized backpack which also contained documents bearing Young's name (id. at 88-89); the testimony of Postal Inspector Bruce Allen regarding a gun holster and magazine holding seven hollow point – millimeter bullets observed in and photographed during the aforementioned search of Unit 809 and photographs taken on a return to a then empty Unit 809 on October 2, 2006 which appeared to have been vacated "in a hurry" (id. at 158-60, 167);  testimony establishing that the loose bullets found in the seized backpack which contained documents bearing Young's name were identical to the bullets found in Unit 809 (id. at 182-83); testimony regarding Young's six or seven telephone calls to Inspector Willis asking for the return of items seized during the search of Unit 809 (Id. at 193-94); testimony of Yolanda Collins that she was renting Unit 809 to Young pursuant to an agreement that he would pay the rent and utilities which would remain in Ms. Collins' name (Id. at 223-24); Ms. Collins' testimony regarding having seen Young with a gun on two occasions, one at Unit 809 when she came to deliver the light bill to Young (Id at 230-31) and a second time in the parking lot of the mall (Id. at 232); testimony regarding Young's efforts to evade arrest (Doc. 132 at 307); testimony regarding Young's actual arrest on December 4, 2006 (Id. at 308-19, 340-42);  testimony regarding the gun later found behind the back seat in the vehicle that transported Young to jail (Id. at 344-45), a vehicle that had not been used to transport any other person since Young, although a witness did sit on one occasion in the front seat  during an interview (id. at 347); testimony that the gun found in the vehicle which transported Young bore the same serial number as was located on the receipt found in a shoe box containing other documents bearing Young's name and seized during the search of Unit 809 (id. at 349 and doc. 131 at 79); and  Young's former girlfriend, Shacovia Howell, described several (Continued)

One, Two, Three, Four, Five, and Seven, and it is thus, it is the recommendation of the undersigned that these claims be DENIED as being procedurally defaulted.

## II. Habeas Claim Eight

In Young's Eighth Claim in his § 2255 motion, he asserts that he is "actually innocent." (Doc. 163 at 11). As discussed in the paragraphs above, "'actual innocence' means factual innocence, not mere legal innocence." Lynn, 365 F.3d at 1235, n. 18 (quoting Bousley v. United States, 523 U.S. at 623). The Court has thoroughly reviewed the record in this matter, including the transcripts from Petitioner Young's trial, and finds that there is no evidence that establishes that Young is actually innocent in this matter. Therefore, it is recommended that Claim Eight be DENIED.

## III. Habeas Claim Six

In Claim Six of his § 2255 motion, Petitioner Young alleges that he received ineffective assistance of counsel. (Doc. 163 at 9). Claim Six is the only claim asserted by Young that is not procedurally defaulted, as the United States Supreme Court has excused claims of ineffective assistance of counsel from the procedural default doctrine. Massaro v. United States, 538 U.S. 500, 504 (2003). However, for the reasons that follow, the Court finds that Petitioner has failed to show that he was denied the effective assistance of counsel.

Young claims generally that his "problems" with his trial attorney, Lila Cleveland, began during the pre-trial stage of the case, concerning strategy and the best way to proceed. (Doc. 163

---

occasions when she saw Young with a gun, verified that Young moved into Unit 809 around the end of August 2006, testified that she accompanied Young to that apartment after the search was conducted on September 29th and described Young's reaction, and identified the gun discovered in the vehicle which transported Young to jail as the gun she had seen in Young's possession on several occasions (*Id*. at 465-75).

at 9). Young contends that attorney Cleveland failed to conduct and pursue investigations regarding the gun, to interview certain witnesses, to file certain motions, to subpoena certain witnesses for trial, to ask certain questions, and to make certain objections. (Id.). Petitioner also claims that attorney Cleveland breached the attorney /client privilege by discussing her case with the trial judge without his authorization, and by threatening Petitioner Young that she would withdraw from the case and advise the trial judge that he was guilty if he took the stand against her advice. (Id.). Young also claims that attorney Cleveland attempted to pressure him into pleading guilty by advising him that she could guarantee him a lighter sentence. (Id. at 10).

In order for Petitioner to establish a claim of ineffective assistance of counsel, he must show that his counsel's performance was deficient, and that he was actually prejudiced by that deficiency. Gordon v. United States, 518 F.3d 129; Strickland v. Washington, 466 U.S. 668. Deficient performance requires a showing that counsel's performance was "objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases." Cross, 893 F.2d at 1290. "There is a strong presumption that counsel's performance was reasonable and adequate," which can be overcome only if the petitioner demonstrates that "no competent counsel would have taken the action that his counsel did take." Gordon, 518 F.3d at 1301 (citations omitted). The test for reasonableness of performance "is not whether counsel could have done something more or different; instead, we must consider whether the performance fell within the broad range of reasonable assistance at trial." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1209 (11th Cir. 2007).

Petitioner has failed to show that he received ineffective assistance of counsel. First, attorney Cleveland's court filings during the pre-trial stage of the case are reflected in the record. On July 18, 2007, Ms. Cleveland was appointed to represent Young, and in August and

September 2007, filed a number of pretrial motions and pleadings: requesting Defendant be allowed to view the physical evidence with counsel (Doc. 21), for a bill of particulars (Doc. 22), a response challenging the government's intent to introduce 404(b) evidence (Doc. 23), to dismiss the indictment (Doc. 26), for a speedy trial (Doc. 39), and noticing the court of the intent to introduce expert testimony at trial (Doc. 43). Cleveland's pre-trial performance certainly could not be characterized as "ineffective" as Petitioner Young complains.

As to Petitioner's claim that attorney Cleveland violated the attorney/client relationship and disclosed to Judge Granade that Young was going to perjure himself, this is in direct opposition to the record. As the record reflects, and as this Court has quoted extensively earlier in this report, attorney Cleveland very carefully approached Judge Granade and without disclosing her reasons, requested to withdraw from representation of Petitioner prior to him taking the stand. (Doc. 132 at 122-124). Attorney Cleveland had an ethical duty to take the actions that she did, and Judge Granade determined a method in which attorney Cleveland could remain involved in the trial with Petitioner testifying in narrative form, without violating any ethical obligations on her part. (Id.). Again, there was clearly no deficient performance on the part of attorney Cleveland.

Young's other primary complaint regarding his attorney was that she was ineffective when she attempted to "pressure" him to plead guilty. (Doc. 163 at 10). First, the Court notes the obvious, which is that Petitioner did not plead guilty, but rather, proceeded to trial where a jury ultimately returned a guilty verdict against him. Second, as noted by the government in their response, had Petitioner pled guilty, he would have received a significantly more favorable sentence. (Doc. 174 at 44). According to the United States, if Petitioner had entered into a standard plea agreement, and taking into account acceptance, and avoiding the perjury

enhancement which Petitioner received in his trial for lying on the stand, Petitioner's sentence could have been as much as 69 months *less* than that he received following his guilty verdict. (Id.). Thus, the allegation that any pressure by his attorney Lila Cleveland for Petitioner to plead guilty fails to state any kind of a claim of ineffective assistance of counsel because it was not poor legal advice at all.

As the Court has been presented absolutely no evidence to support Petitioner Young's claim of deficient performance by attorney Cleveland, the Court need not consider the prejudice prong of the Strickland test. Strickland, 466 U.S. at 697; Oats v. Singletary, 141 F.3d 1018, 1023 (11th Cir. 1998). Thus, it is this Court's opinion that Petitioner Young was not denied effective counsel in this matter, and it is recommended that Claim Six, as all other claims, be DENIED. (Id. at 9-10).

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that

jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where a habeas petition is being denied on the merits of an underlying constitutional claim, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot [v. Estelle, 463 U.S. 880, 893 (1983)], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). None of Petitioner's claims are such as would warrant the issuance of a Certificate of Appealability. The recommendation that these claims be denied is based on the straightforward application of clear Circuit precedent, and no reasonable jurist could differ on the appropriate disposition of the claims on the record presented. It is thus recommended that the Court deny any request for a Certificate of Appealability.

Additionally, the undersigned here addresses the related issue of whether any appeal of an order adopting this Report and Recommendation and denying habeas relief may be brought *in forma pauperis*. An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); see Fed.R.App. P. 24(a)(3)(A); Lee v. Clinton, 209 F.3d 1025, 1026 (7th Cir. 2000) (concluding that "good faith" is "an objective concept" and that "not taken in good faith" is "a synonym for frivolous"); DeSantis v. United Techs, Corp., 15 F.Supp.2d 1285, 1288-89 (M.D .Fla. 1998) (stating that good faith "must be judged by an objective, not a subjective, standard" and that an appellant "demonstrates

good faith when he seeks appellate review of any issue that is not frivolous"). An appeal filed *in forma pauperis* is frivolous if "it appears that the Plaintiff has little to no chance of success," meaning that the "factual allegations are clearly baseless or that the legal theories are indisputably meritless." <u>Carroll v. Gross</u>, 984 F.2d 392, 393 (11th Cir. 1993). For the foregoing reasons, the undersigned recommends that the court find no possible good faith basis for appeal of the denial of the petitioner's habeas claims, and thus that no appeal of such a ruling may be brought *in forma pauperis*.

<u>Conclusion</u>

Based upon the foregoing reasons, it is recommended that Petitioner's § 2255 Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (doc. 163) be **DENIED**, that this action be **DISMISSED**, and that **JUDGMENT** be entered in favor of the United States of America, and against Petitioner Laphonse Tremane Akilio Young.[7] In addition, the undersigned Magistrate Judge is of the opinion that Petitioner is not entitled to issuance of a Certificate of Appealability and that no appeal of the denial of petitioner's habeas motion should be brought *in forma pauperis*. It is so **RECOMMENDED**.

The instructions which follow contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the <u>27th</u> day of May, 2011.


*s/s* Katherine P. Nelson_____
KATHERINE P. NELSON
UNITED STATES MAGISTRATE JUDGE

---

[7] Petitioner's pending motions (Docs. 181, 182, 183, and 184) will be deemed MOOT with the adoption of this Report and Recommendation.

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.      ***Objection***.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[15] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.
>
> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.   Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

      **Done** this   27th   day of May, 2011.

                  /s/ Katherine P. Nelson
                  UNITED STATES MAGISTRATE JUDGE

---

[15] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  <u>Fed. R. Civ. P.</u> 72(b)(2).